# Exhibit IND6

RUSS, AUGUST & KABAT
Marc A. Fenster, State Bar No. 181067
Email: mfenster@raklaw.com
Bruce D. Kuyper, State Bar No. 144969
Email: bkuyper@raklaw.com
Alexander C.D. Giza, State Bar No. 212327
Email: agiza@raklaw.com
Andrew D. Weiss, State Bar No. 232974
Email: aweiss@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Attorneys for Plaintiff
NEUROGRAFIX

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| NEUROGRAFIX, a California corporation; WASHINGTON RESEARCH FOUNDATION, a not-for-profit Washington corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>SIEMENS MEDICAL SOLUTIONS USA, INC., a Delaware corporation; and SIEMENS AKTIENGESELLSCHAFT, a German Corporation,<br><br>Defendants. | Case No. 10-CV-1990 MRP (RZx)<br><br>[Assigned to The Honorable Mariana R. Pfaelzer]<br><br>**REBUTTAL EXPERT REPORT OF DR. AARON FILLER, M.D., PH.D, FRCS TO THE EXPERT REPORT OF MICHAEL E. MOSELEY CONCERNING U.S. PATENT NO. 5,560,360**<br><br>First Amended Complaint Filed: July 30, 2010 |

also base my opinions on my comprehensive education, research, knowledge and experience of over 15 years.

## II. INTRODUCTION.

10. I have been asked to review Dr. Moseley's expert report and provide my opinions in response to his report. I disagree with Dr. Moseley's opinion that one having ordinary skill in the art would not be able to discern the boundaries of any claims that contain the terms "conspicuity of the nerve that is at least 1.1 times that of [the]/[any adjacent] non-neural tissue" and "the nerve at an intensity at least 5 times that of the non-neural tissue."

11. It is my understanding that Defendants have asserted that both claim terms are indefinite.

12. It is my understanding that NeuroGrafix has proposed the following constructions for each term:

| Terms | Construction |
| --- | --- |
| conspicuity of the nerve that is at least 1.1 times that of the non-neural tissue<br><br>conspicuity of the nerve that is at least 1.1 times that of any adjacent non-neural tissue | contrast (in, for example, intensity and color) between the nerve and [the]/[any adjacent] non-neural tissue is at least 1.1 times |
| the nerve at an intensity at least 5 times that of the non-neural tissue | contrast (in, for example, intensity and color) between the nerve and any adjacent non-neural tissue is at least 1.1 times |

13. It is my understanding that the parties agree that intensity in the second term is coextensive with conspicuity.

## III. QUALIFICATIONS.

14. I incorporate by reference the qualifications in my opening expert report, including my CV, served January 24, 2011.

for two reasons. First, as discussed above, the algorithms he cites are not supported in the literature and would not be used by one of skill in the art for MRI (except for the one described in the specification and in ¶25 of his report). Second, while the different MRI-related algorithms referenced by Dr. Moseley (paragraphs 24-27) will produce slightly different data, the differences are insignificant in determining whether an image meets the threshold of being 1.1 times.

47. Dr. Moseley's own Table 1 on page 11 of his report proves this point. Although Dr. Moseley does not use an image of a peripheral nerve[2] and does not indicate the pulse sequence used to generate the image used to generate Table 1 (and it does not appear to be consistent with various claims as it appears to fail to include fat suppression), it is clear that all of the calculations do not differ very much.[3] They all show, unsurprising, that the image (if made using the disclosed method) did not infringe.

48. The tables in Exhibit A related to Figures 2, 3 and 4[4] illustrate similar calculations to Dr. Moseley's Table 1. The images used, however, were made using the method disclosed by the claims. As can be seen, regardless of the method used (mean, min, max, max-min) and non-neural tissue chosen, the results are the same: the nerve has a conspicuity of 1.1 times more than the non-neural tissue. Additionally, in my experience of reading

---

[2] Dr. Moseley is using an image of the neck and the region of interest is the spinal cord, a part of the central nervous system. Significantly, Dr. Moseley does not provide a single example of a data set showing a peripheral nerve.

[3] The only outlier is the last column of the first row of Table 1. As I explain above, though, the minimum to minimum comparison algorithm is inappropriate and can result in inconsistent results. One of skill in the art would not use this method to calculate the contrast or conspicuity. This data is irrelevant.

[4] The image in Exhibit A, figures 2 through 4 was generated using the following configuration: Philips Achieva 1.5 Tesla MRI Scanner, UCSF STIR Neurogram protocol, SENSE. The measurements were taken with an industry accepted DICOM program called Osirix from the original DICOM data set.

over 10,000 images made using the patented method, 100% of the studies that I have seen clearly met and exceed the a nerve conspicuity of 1.1 times non-neural tissues in at least one image pane in the image examination regardless of the evaluation method used. In other words, whether one calculates conspicuity using the average signal intensity (as disclosed in the patent and the literature of the time) or maximum or minimum, at least one pane in a study will have a nerve conspicuity 1.1 times non-neural tissues. The nerve is typically homogenous and bright in image panes made using the patented method. However, in some image panes, the differing internal components of the nerve will cause it to have a greater conspicuity than surrounding more homogenous tissues when the Max-Min formula is used. The claim does not require that every image pane meet the limitation, only that the data set does. Based on my experience, one of skill in the art would have no doubt determining that when the method is being practiced.

### B. Dr. Moseley's Opinions Regarding Visual Conspicuity Are Both Irrelevant and Erroneous.

49. As explained above, one of skill in the art would understand conspicuity to mean what it is expressly defined as in the specification: "the contrast (in, for example, intensity or color)." This is not visual conspicuity from viewing an image, but rather an objective, quantifiable measure based on the data set. I do not view any statements from file history regarding conspicuity being "visually present" referenced in paragraph 10 of Dr. Moseley's report as altering the express definition as an objective, quantifiable measure of conspicuity disclosed by the patent and known to one having ordinary skill in the art at the time of the application. I therefore disagree that Dr. Moseley's discussion regarding visual conspicuity is even

presented in various different contrast configurations on a computer monitor. If tissue A has a higher intensity than tissue B, there is no legitimate manipulation of window level that renders tissue B of higher intensity than tissue A unless the entire image is uniformly inverted to a non-standard negative version. Medical imaging is fundamentally a very objective physical examination.

56. Furthermore, as illustrated in the images attached as Exhibit A, Figures 5, 6 and 7, regardless of how the contrast or window level is adjusted, the relative intensities and the result conspicuity remains essentially the same because the underlying DICOM data set that is the source of data for the signal intensity measurements does is not altered when the visual representation is changed.[5] Indeed, as one having ordinary skill in the art knew, the DICOM standard (or its predecessor NEMA standard) requires that the underlying data set remain the same regardless of the visual changes made by viewing radiologist on the monitor. As a result, in those situations where a radiologist is required to perform a calculation based on signal intensity (e.g., conspicuity), the actual data used remains consistent as the measures are made from the DICOM data set (12 bit or 16 bit) and not from the manipulated 8 bit set on the screen which radiological DICOM viewing software such as Osirix does not allow. In the NEMA and DICOM standards, once the patient image data is acquired, no user is allowed to alter the original data. Only the onscreen representation of the data may be altered.

57. Indeed, it is well known those skilled in the art that in reading an MRI image, the visual assessment of conspicuity is always subject to verification

---

[5] The numbers in figures 5, 6 and 7 of Exhibit A vary slightly because slightly different regions of interest are chosen.

I declare under penalty of perjury that the statements in this report are true and correct.

Executed on February 1, 2011 in Santa Monica, California.

_____
Dr. Aaron Filler, M.D., Ph.D., FRCS