Gregg F. LoCascio, P.C. (*pro hac vice*)
gregg.locascio@kirkland.com
Sean M. McEldowney (S.B.N. 248368)
sean.mceldowney@kirkland.com
Christopher Nalevanko (*pro hac vice*)
christopher.nalevanko@kirkland.com
Brian N. Gross (*pro hac vice*)
brian.gross@kirkland.com
KIRKLAND & ELLIS LLP
655 Fifteenth St., N.W.
Washington, D.C.  20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

Luke L. Dauchot (S.B.N. 229829)
luke.dauchot@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope St.
Los Angeles, CA  90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Attorneys for Defendants
SIEMENS MEDICAL SOLUTIONS USA, INC.
and SIEMENS AKTIENGESELLSCHAFT

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEUROGRAFIX, a California corporation; WASHINGTON RESEARCH FOUNDATION, a not-for-profit Washington corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>SIEMENS MEDICAL SOLUTIONS USA, INC., a Delaware corporation; and SIEMENS AKTIENGESELLSCHAFT, a German corporation,<br><br>Defendants. | CASE NO. CV 10-1990 MRP(RZX)<br><br>**REPLY IN SUPPORT OF SIEMENS' MOTION FOR PARTIAL SUMMARY JUDGMENT OF INVALIDITY REGARDING CLAIMS 3-5, 36, 37, 39-44, 46, 47, 49, 50, 55, 56, 58, 59, 61, AND 62 IN U.S. PATENT NO. 5,560,360 IN LIGHT OF CLAIM CONSTRUCTION ORDER**<br><br>**The Hon. Mariana R. Pfaelzer<br>United States District Court Judge**<br><br>**Hearing Date:** October 5, 2011<br>**Time:** 11 a.m.<br>**Location:** Courtroom 12 |

| | |
|---|---|
| 1 | |
| 2 | SIEMENS MEDICAL SOLUTIONS USA, INC. |
| 3 | |
| 4 | Counterclaim Plaintiff, |
| 5 | vs. |
| 6 | NEUROGRAFIX, and WASHINGTON RESEARCH FOUNDATION, |
| 7 | Counterclaim Defendants. |

# TABLE OF CONTENTS

I. HAJNAL ANTICIPATES CLAIMS 3, 4, AND 5 ............................................. 3

    A. Under the Correct and Agreed Construction of Element (d)[iii], Hajnal Discloses that Element .......................................................... 3

    B. The Court Should Reject Plaintiffs' Attempt to Survive Summary Judgment by Arguing New Claim Construction Positions that Are Inconsistent with the '360 Patent and the Court's Claim Construction Order ............................................................................... 6

II. PLAINTIFFS DO NOT DISPUTE THAT SIEMENS IS ENTITLED TO SUMMARY JUDGMENT OF INVALIDITY ON CLAIMS 36, 37, 39-44, 46, 47, 49, 50, 55, 56, 58, 59, 61, AND 62 UNDER THE COURT'S CLAIM CONSTRUCTION ORDER ............................................................. 9

III. CONCLUSION .................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*3M Co. v. Chemque, Inc.*,
 303 F.3d 1294 (Fed. Cir. 2002) .................................................................................5

*AK Steel Corp. v. Sollac & Ugine*,
 344 F.3d 1234 (Fed. Cir. 2003) .................................................................................5

*Chicago Mercantile Exch., Inc. v. Tech. Research Grp., LLC*,
 2011 WL 1680579 (N.D. Ill. April 29, 2011).........................................................6, 9

*JSR Corp. v. Tokyo Ohka Kogyo Co.*,
 2001 WL 1812378 (N.D. Cal. Sept. 13, 2001).......................................................2, 7

*Liquid Dynamics Corp. v. Vaughan Co.*,
 449 F.3d 1209 (Fed. Cir. 2006) ..............................................................................6, 9

*Matsushita Elec. Indus. Co. v. Samsung Elecs. Co.*,
 2006 WL 1794768 (D.N.J. June 26, 2006)................................................................7

*Medrad, Inc. v. MRI Devices Corp.*,
 401 F.3d 1313 (Fed. Cir. 2005) .................................................................................8

*Regents of Univ. of Cal. v. Micro Therapeutics, Inc.*,
 2007 WL 2429412 (N.D. Cal. Aug. 23, 2007) .......................................................6, 9

*Regents of Univ. of Cal. v. Micro Therapeutics, Inc.*,
 507 F.Supp.2d 1074 (N.D. Cal. 2007).......................................................................7

*Wright Med. Tech., Inc. v. Osteonics Corp.*,
 122 F.3d 1440 (Fed. Cir. 1997) .................................................................................8

# EXHIBIT LIST

The following exhibits cited herein refer to the exhibits to the August 31, 2011 Declaration of Sean M. McEldowney In Further Support of Siemens' Motion for Partial Summary Judgment of Invalidity Regarding Claims 3-5, 36, 37, 39-44, 46, 47, 49, 50, 55, 56, 58, 59, 61, and 62 in U.S. Patent No. 5,560,360 in Light of Claim Construction Order, filed concurrently herewith. References to the File History for U.S. Patent No. 5,560,360 are cited as "JA__" and refer to the parties Joint Appendix submitted on February 11, 2011 (D.I. 102).

*Exhibit 10:* Excerpts from the *Markman* Hearing, dated March 24, 2011

*Exhibit 11:* Excerpts from the deposition of Michael N. Brant-Zawadzki, M.D., dated August 16, 2011

*Exhibit 12:* Paul A. Bottomley et al., *A review of normal tissue hydrogen NMR relaxation times and relaxation mechanisms from 1-100 MHz: Dependence on tissue type, NMR frequency, temperature, species, excision, and age*, 11(4) Medical Physics 425 (1984)

*Exhibit 13:* Excerpts from Dan L. Bader et al., *Ulcer Pressure Research: Current and Future Perspectives* (Springer ed. 2005)

*Exhibit 14:* Excerpts from P. D. Gatehouse & G. M. Bydder, *Magnetic Resonance Imaging of Short $T_2$ Components in Tissue*, Clinical Radiology 58 (2003)

*Exhibit 15:* M. Weiger et al., *Direct Depiction of Bone Microstructure Using ZTE Imaging*, 19 Proc. Intl. Soc. Mag. Reson. Med. 563 (2011)

As demonstrated in Siemens' opening brief, method claims 3, 4, and 5 of the '360 patent are invalid because the Hajnal prior art reference discloses all of the steps in those three claims. Plaintiffs concede that Hajnal shows at least six of the seven elements in claim 3, and Plaintiffs do not dispute that Hajnal meets the limitations added by dependent claims 4 and 5. (D.I. 126, Plaintiffs' Response to Siemens' Statement of Uncontroverted Facts.) Indeed, the only way that Plaintiffs could manufacture a purported basis to oppose summary judgment on these three claims was to change course on the claim construction for element (d)[iii] in claim 3, by ignoring the parties' previously agreed-upon construction for that element and reading into claim 3 a new requirement that is legally incorrect as a matter of claim construction and based on an argument that this Court previously rejected.

Although Plaintiffs' sole basis to oppose summary judgment is their changed reading of element (d)[iii], they decline to acknowledge their argument for what it is: a new claim construction position that contradicts the parties' joint *Markman* submission to the Court. Instead, Plaintiffs' opposition brief simply acts as if claim construction and the parties' disclosures and agreements never happened. Specifically, Plaintiffs ignore the fact that the parties agreed on the proper construction of element (d)[iii] over seven months ago and submitted that construction to the Court. In addition to never mentioning the agreed construction for element (d)[iii] in their brief, the recent deposition of Plaintiffs' expert made clear that they also elected not to inform their expert – who submitted a declaration purporting to address the meaning of element (d)[iii] – that the parties had already agreed on the meaning of that same element.

Despite Plaintiffs' apparent attempt to narrow the scope of claim 3 to avoid summary judgment, under the correct and agreed construction, element (d)[iii] requires using what is "referred to as a T2-weighted sequence." (D.I. 99-1.) And as shown in Siemens' opening brief (Br. at 11-13) and not disputed by Plaintiffs, Hajnal

expressly discloses using a T2-weighted sequence. Plaintiffs cannot and do not offer any basis to rebut a finding of anticipation under the agreed construction.

The parties were required to disclose their claim construction positions and submit any agreed-upon constructions seven months ago for a reason. (D.I. 91, 92.) There is no legitimate basis for Plaintiffs to ignore the parties' previously agreed construction, and Plaintiffs never sought leave to modify that construction. Instead, Plaintiffs' attempt to avoid the dispositive effect of the agreed construction is precisely the kind of "vexatious shuffling of positions" the claim construction process in this case was intended to prevent. *JSR Corp. v. Tokyo Ohka Kogyo Co.*, 2001 WL 1812378, at *5 (N.D. Cal. Sept. 13, 2001). Not only is Plaintiffs' attempt to survive summary judgment by modifying an agreed construction procedurally improper, but their newly proposed construction is also plainly inconsistent with the claims in the patent and is based on a view of the claims that the Court already rejected in its claim construction order. On each of these grounds, Plaintiffs' opposition regarding Hajnal should be rejected and summary judgment of anticipation should be granted on claims 3, 4, and 5.

With respect to summary judgment on claims 36, 37, 39-44, 46, 47, 49, 50, 55, 56, 58, 59, 61, and 62, Plaintiffs do not dispute that summary judgment of invalidity is required in light of the Court's May 5, 2011 claim construction order, and Siemens' motion for summary judgment should be granted as a result.

## I. HAJNAL ANTICIPATES CLAIMS 3, 4, AND 5

### A. Under the Correct and Agreed Construction of Element (d)[iii], Hajnal Discloses that Element

Over seven months ago, the parties' agreed on the proper construction of the claim language that the parties' briefing refers to as element "(d)[iii]" of claim 3.[1] The '360 patent and Plaintiffs' own positions during claim construction demonstrate that the agreed construction for element (d)[iii] is the correct construction, and under that agreed construction Hajnal discloses element (d)[iii]. Plaintiffs' opposition wholly ignores the agreed construction and its dispositive effect.

Element (d)[iii] is part of step (d) in claim 3. Step (d) in claim 3 requires "controlling the performance of steps (a), (b), and (c)." ('360 patent, claim 3.) As Plaintiffs themselves explained during claim construction, "controlling" in step (d) is the act of "applying one or more pulse sequences." (D.I. 103, at 16; *see also* Ex. 7, Filler Dep. at 170:16-23 (step (d) is "the execution of a pulse sequence").)[2] Plaintiffs also explained during claim construction that what distinguishes claim 3 from some of the other independent claims is that element (d)[iii] in claim 3 requires the "controlling" step to include applying a "T2-weighted" pulse sequence. (Ex. 10, 3/24/11 Hr'g Tr. at 44:17-45:3.) Contrary to Plaintiffs' new claim construction

---

[1] Step (d) in claim 3 recites:
> controlling the performance of the steps (a), (b), and (c) to enhance, in the output produced, the selectivity of said nerve, while the nerve is living in the in vivo region of the subject, ***said step of controlling the performance of steps (a), (b), and (c) including selecting a combination of echo time and repetition time that exploits a characteristic spin-spin relaxation coefficient of peripheral nerves, cranial nerves numbers three through twelve, and autonomic nerves, wherein said spin-spin relaxation coefficient is substantially longer than that of other surrounding tissue.***

The parties have referred to the bolded language as element "(d)[iii]." Plaintiffs do not dispute that Hajnal discloses the other portions of step (d). (D.I. 126.)

[2] Exs. 1-9 were attached to the July 15, 2011 McEldowney Decl. (D.I. 120.) Exs. 10-15 are submitted with this brief. All emphasis herein is added unless noted.

argument, the '360 patent explains that a T2-weighted pulse sequence is characterized by the selection of a "relatively long TE (echo time) or TR (repetition time)" ('360 patent, 23:31-35), not by the coincidence of what kinds of tissue are in the background of an MR image.[3]

Based on that understanding of step (d), the parties agreed that element (d)[iii] requires what is "commonly referred to as a T2-weighted sequence." That construction was submitted to the Court in the parties' joint claim construction statement:

| Additional but Undisputed Terms the Parties Believe Require Construction | Claims | Agreed Proposed Construction |
|---|---|---|
| 10. "a combination of echo time and repetition time that exploits a characteristic spin-spin relaxation coefficient of peripheral nerves cranial nerves numbers three through twelve, and autonomic nerves, [wherein] said spin-spin relaxation coefficient [is] / [of these nerves being] substantially longer than that of other surrounding tissue" | 3, 25 | A combination of echo time and repetition time that is designed to take advantage of the differences in T2 values in the nerve compared to surrounding tissue. This is commonly referred to as a T2-weighted sequence. |

(D.I. 99-1, at 15.) Consistent with that construction, claims 4 and 5 in the '360 patent leave no doubt that element (d)[iii] simply requires selecting a relatively long TE or TR, which is designed to achieve T2-weighting. Dependent claims 4 and 5 list specific values for TE and TR, independent of the composition of the surrounding non-neural tissue, that achieve the required T2-weighting. Because claims 4 and 5 depend on claim 3 and expressly add a further requirement to element (d)[iii], selecting a TE or TR value that meets claim 4 and/or 5 would necessarily meet element (d)[iii] in claim 3. Figure 5 in Hajnal was made using an echo time and repetition time that meet the numerical values recited in claims 4 and 5, and Hajnal must therefore meet the necessarily broader limitation in element (d)[iii] in independent claim 3. *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1242 (Fed.

---

[3] Indeed, the only basis of NeuroGrafix's Infringement Contentions on element (d)[iii] is a citation to the use of a "prolonged TE of 316 ms and TR of 4000 ms." (Weiss Ex. A to Opp'n Br. at 11-12.)

Cir. 2003) ("If the dependent claims expressly recite 'up to about 10%' silicon, then the independent claims, which must be at least as broad as the claims that depend from them, must include aluminum coatings with "up to about 10%" silicon."); *3M Co. v. Chemque, Inc.*, 303 F.3d 1294, 1299 (Fed. Cir. 2002) (error to find dependent claim anticipated while independent claim found not anticipated because: "While Schrödinger's cat may be both alive and dead at any given moment, even in theory, claim limitations cannot be concurrently both met and not met.").

Indeed, Plaintiffs do not appear to dispute that Hajnal Figure 5 was made using a T2-weighted sequence, nor could they plausibly do so in light of the express disclosure in Hajnal. (Ex. 1, Hajnal at 9 (anisotropic diffusion pulse sequences like the ones used in Hajnal are "heavily T2 weighted by virtue of their long values of TE").) And Plaintiffs acknowledge that Siemens' opening brief "show[s] that Figure 5 of the Hajnal reference may have been generated using a pulse sequence where the signal intensity is influenced by T2 weighting." (Opp'n Br. at 3.) That is precisely what step (d) in claim 3 requires, and precisely what the parties agreed element (d)[iii] requires.

Rather than addressing the correct and agreed construction and its dispositive effect, however, Plaintiffs' brief does not even reference the fact that the parties already agreed on the meaning of element (d)[iii], let alone does their brief analyze Hajnal in light of that construction. The only evidence Plaintiffs submit in opposition to summary judgment is a declaration by Dr. Brant-Zawadzki. But we now know that Plaintiffs never showed Dr. Brant-Zawadzki the parties' agreed construction for element (d)[iii], and he admitted that his opinion is based on an interpretation of the claim language different than what the parties agreed to and previously submitted to the Court. (Ex. 11, Brant-Zawadki Tr. at 140:14-17; 147:22-148:4.) Dr. Brant-Zawadzki's opinion and Plaintiffs' argument based on his opinion are therefore irrelevant. *See, e.g., Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2

(Fed. Cir. 2006) (district court properly "excluded the expert opinion evidence as irrelevant because it was based on an impermissible claim construction"); *Chicago Mercantile Exch., Inc. v. Tech. Research Grp., LLC*, 2011 WL 1680579, at *5 (N.D. Ill. April 29, 2011) ("Exclusion is proper, TRG asserts, because evidence based upon a mistaken construction of a patent is irrelevant. The Court agrees."); *Regents of Univ. of Cal. v. Micro Therapeutics, Inc.*, 2007 WL 2429412, at *3 (N.D. Cal. Aug. 23, 2007) ("After the Court has issued its Claim Construction Order, an expert giving opinion testimony with respect to infringement must apply the Court's claim interpretation. In this case, the Court finds that Dr. Nesbit's opinion does not comply with the Court's construction….").

Under the correct and agreed construction of element (d)[iii], Hajnal discloses that element. Plaintiffs have simply offered no evidence or argument to the contrary under the agreed construction, and Siemens is entitled to summary judgment on claims 3, 4, and 5 for that reason alone.

**B. The Court Should Reject Plaintiffs' Attempt to Survive Summary Judgment by Arguing New Claim Construction Positions that Are Inconsistent with the '360 Patent and the Court's Claim Construction Order**

Instead of addressing the agreed and proper construction, Plaintiffs' opposition is premised on a newly concocted construction that tactically parses the language from element (d)[iii] so as to add a requirement that is outside the scope of the parties' agreed construction, contrary to basic claim construction principles, and based on an argument the Court already rejected. On each of these grounds, Plaintiffs' argument should be rejected.

First, the parties reached their agreed construction for element (d)[iii] after a full pre-*Markman* process and several lengthy meet and confers. (D.I. 91, 92.) Yet Plaintiffs never raised the claim construction position that is now the sole basis for their summary judgment opposition. Seven months have now passed since the parties stipulated to what certain elements, including element (d)[iii], mean in the '360 patent.

Plaintiffs should not be permitted to propose a new claim construction in response to summary judgment, and the Court should enforce the parties' agreement on the meaning of element (d)[iii]. (D.I. 91 (agreeing to follow claim construction disclosures required by N.D. Cal. Local Patent Rules)); *JSR Corp.*, 2001 WL 1812378, at *5 (refusing to allow a party to rescind its stipulated claim construction at summary judgment because it "would encourage the 'vexatious shuffling of positions' that the patent local rules were designed to avoid"); *Regents of Univ. of Cal. v. Micro Therapeutics, Inc.*, 507 F.Supp.2d 1074, 1080 (N.D. Cal. 2007) ("[O]nce the parties have reached and relied on stipulated definitions in litigation, the Court may refuse to allow a party to withdraw from the stipulation."); *Matsushita Elec. Indus. Co. v. Samsung Elecs. Co.*, 2006 WL 1794768, and *7-8 (D.N.J. June 26, 2006) (refusing to "adopt a more narrow claim construction than the one jointly agreed to by the parties," in part "because of Samsung's failure to advance this argument during the claim construction process").

Second, Plaintiffs' proposed construction is flatly inconsistent with the claims in the '360 patent. Plaintiffs' argument takes a clause from element (d)[iii] merely stating that nerves inherently have a "characteristic" T2 decay time and attempts to turn it into an additional "requirement…that the nerve must have a T2 decay time that is substantially longer than the tissue around it" in a particular image in order to satisfy claim 3. (Opp'n Br. at 3.) Plaintiffs' argument for avoiding Hajnal is that "this requirement is not true" in an image where nerves are surrounded by tissue that has a T2 decay time that is "similar to" or longer than the T2 decay time of nerve.[4] (Opp'n Br. at 3-5.) That argument cannot be reconciled with claim 6, which depends on claim 3. Claim 6 requires that the non-neural tissue in the image "includes fat," and fat has a T2 decay time similar to or longer than nerve tissue. (*See, e.g.*, Ex. 12,

---

[4] Notably, Figure 5 in Hajnal does include structures with substantially shorter T2 decay times than nerve tissue, such as bone, which has a T2 decay time on the order of less than 1 millisecond. (*See, e.g.*, Ex. 14, Gatehouse & Bydder; Ex. 15, Weiger et al.)

Bottomley et al., at 425, 435, 438 (listing T2 relaxation time as 84 ms for fat and 58 ms for nerve); Ex. 13, Bader et al., at 321 (measuring T2 decay time as 84 ms for fat and 77 ms for nerve).) Because claim 6 depends from claim 3, it must incorporate all the limitations of claim 3, including element (d)[iii]. But having fat (with its high T2 decay time) around the nerve, as claim 6 requires, would violate Plaintiffs' proposed requirement in element (d)[iii] that the surrounding tissue must have a substantially shorter T2 decay time than the nerve. The Federal Circuit has explained that such a construction ***cannot*** be correct, because it creates an irreconcilable inconsistency between claim 3 and its dependent claim 6. *Wright Med. Tech., Inc. v. Osteonics Corp.*, 122 F.3d 1440, 1445 (Fed. Cir. 1997) ("[W]e must not interpret an independent claim in a way that is inconsistent with a claim which depends from it."); *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1317 (Fed. Cir. 2005) (rejecting Medrad's proposed construction because "it is impossible to read both claim 1 and dependent claim 2 together while maintaining Medrad's definition").

Third, in an attempt to bolster their new claim construction position, Plaintiffs also reargue a view of the claims that the Court already rejected. Plaintiffs argue that "this patent is not aimed at imaging nerves in the 'brain,'" because some tissues in the brain have T2 decay times similar to or higher than nerve tissue. (Opp'n Br. at 1.) Therefore, according to Plaintiffs, Hajnal cannot anticipate claim 3 because "Hajnal describes imaging the trigeminal nerve [Cranial Nerve 5], which is a cranial nerve in the brain." (Opp'n Br. at 1.) But the Court's claim construction order expressly rejected Plaintiffs' argument that the '360 patent is limited to imaging nerves outside of the brain (*i.e.,* outside the "arachnoid space"). (*Compare* D.I. 103, Plaintiffs' Opening *Markman* Br., at 8 (arguing that Siemens' proposed construction was incorrect because "the inclusion of nerves inside of the arachnoid space contradicts the clear and unambiguous intent of the inventors"), *with* D.I. 114, Claim Construction Order, at 10 (adopting Siemens' proposed construction because "the claim covers

systems capable of imaging...nerves that start inside the [arachnoid] space and pass outside of that space"). Dr. Brant-Zawadki's opinion regarding the scope of claim 3 is likewise premised on his mistaken understanding that claim 3 only covers imaging portions of cranial nerves outside of the arachnoid space, and he was not aware that the Court had already rejected that view:

> Q. So your interpretation of cranial nerves Nos. 3 through 12 is the portion of those nerves outside of the cranial space?
> A. Outside of the subarachnoid space, yes. I mean that's how I understand this patent. I may be wrong in that understanding. That's my concept of this.
>
> ****
>
> Q. Did you know before you put your report together -- did anybody tell you that NeuroGrafix argued that cranial nerves should be limited to only the portion outside the subarachnoid space, and the court said, "No, that's wrong"? Do you know that?
> A. As I sit here right now, no, I don't know that.

(Ex. 11, Brant-Zawadki Tr. at 158:10-16; 164:23-165:5.) Plaintiffs' argument and their expert's declaration should also therefore be rejected as inconsistent with the Court's claim construction order. *See, e.g., Liquid Dynamics Corp.*, 449 F.3d at 1224 n.2; *Chicago Mercantile Exch., Inc.*, 2011 WL 1680579, at *5; *Regents of Univ. of Cal.*, 2007 WL 2429412, at *3.

## II. PLAINTIFFS DO NOT DISPUTE THAT SIEMENS IS ENTITLED TO SUMMARY JUDGMENT OF INVALIDITY ON CLAIMS 36, 37, 39-44, 46, 47, 49, 50, 55, 56, 58, 59, 61, AND 62 UNDER THE COURT'S CLAIM CONSTRUCTION ORDER

Plaintiffs do not oppose summary judgment of invalidity on apparatus claims 55, 56, 58, 59, 61, and 62, and those claims should therefore be dismissed. (Opp'n Br. at 5.)

Plaintiffs also do not dispute that summary judgment is proper on method claims 36, 37, 39-44, 46, 47, 49, and 50 in light of the Court's claim construction order. (Opp'n Br. at 5.) Plaintiffs' only response on those claims is that now, four

months after the Court's claim construction order and after Siemens' motion for summary judgment, Plaintiffs' have separately moved for reconsideration of the Court's claim construction order on claims 36, 39, 46, and 49. (D.I. 128.) Siemens opposes that motion for reconsideration, and will file a response to that motion. If Plaintiffs' motion for reconsideration is denied, summary judgment should then be entered dismissing claims 36, 37, 39-44, 46, 47, 49, and 50.

### III. CONCLUSION

For these reasons, and those in Siemens' opening brief, Siemens respectfully requests the Court grant summary judgment of invalidity dismissing claims 3, 4, 5 as anticipated by the Hajnal reference, and dismissing claims 36, 37, 39, 40, 41, 42, 43, 44, 46, 47, 49, 50, 55, 56, 58, 59, 61, and 62 as indefinite.

Respectfully submitted,

DATED: August 31, 2011

By: ___/s/ Sean M. McEldowney___
Gregg F. LoCascio, P.C. (*pro hac vice*)
gregg.locascio@kirkland.com
Sean M. McEldowney (S.B.N. 248368)
sean.mceldowney@kirkland.com
Christopher R. Nalevanko (*pro hac vice*)
christopher.nalevanko@kirkland.com
Brian N. Gross (*pro hac vice*)
brian.gross@kirkland.com
KIRKLAND & ELLIS LLP
655 15th St. N.W., Suite 1200
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

Luke L. Dauchot (S.B.N. 229829)
luke.dauchot@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope St.
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Attorneys for Defendants
SIEMENS MEDICAL SOLUTIONS USA, INC.
and SIEMENS AKTIENGESELLSCHAFT

**CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2011, a copy of the foregoing REPLY IN SUPPORT OF SIEMENS' MOTION FOR PARTIAL SUMMARY JUDGMENT OF INVALIDITY REGARDING CLAIMS 3-5, 36, 37, 39-44, 46, 47, 49, 50, 55, 56, 58, 59, 61, AND 62 IN U.S. PATENT NO. 5,560,360 IN LIGHT OF CLAIM CONSTRUCTION ORDER was served upon counsel of record for Plaintiffs registered with the Court's CM/ECF system.

/s/Sean M. McEldowney