Gregg F. LoCascio, P.C. (*pro hac vice*)
gregg.locascio@kirkland.com
Sean M. McEldowney (S.B.N. 248368)
sean.mceldowney@kirkland.com
Christopher Nalevanko (*pro hac vice*)
christopher.nalevanko@kirkland.com
Brian N. Gross (*pro hac vice*)
brian.gross@kirkland.com
KIRKLAND & ELLIS LLP
655 Fifteenth St., N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

Luke L. Dauchot (S.B.N. 229829)
luke.dauchot@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope St.
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Attorneys for Defendants
SIEMENS MEDICAL SOLUTIONS USA, INC.
and SIEMENS AKTIENGESELLSCHAFT

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEUROGRAFIX, a California corporation; WASHINGTON RESEARCH FOUNDATION, a not-for-profit Washington corporation,<br><br>            Plaintiffs,<br><br>       vs.<br><br>SIEMENS MEDICAL SOLUTIONS USA, INC., a Delaware corporation; and SIEMENS AKTIENGESELLSCHAFT, a German corporation,<br><br>            Defendants. | CASE NO. CV 10-1990 MRP(RZX)<br><br>**SIEMENS' REPLY IN SUPPORT OF THE STATEMENT OF UNCONTROVERTED FACTS AND RESPONSE TO PLAINTIFFS' PURPORTED STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**<br><br>**The Hon. Mariana R. Pfaelzer**<br>**United States District Court Judge**<br><br>**Hearing Date:** October 5, 2011<br>**Time:** 11 a.m.<br>**Location:** Courtroom 12 |

SIEMENS MEDICAL SOLUTIONS USA, INC.

Counterclaim Plaintiff,

vs.

NEUROGRAFIX, and WASHINGTON RESEARCH FOUNDATION,

Counterclaim Defendants.

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56-1, Defendant and Counterclaim Plaintiff Siemens Medical Solutions USA, Inc. and Defendant Siemens Aktiengesellschaft (collectively "Siemens") have submitted a Separate Statement of Uncontroverted Facts and Conclusions of Law in support of Siemens' Motion for Partial Summary Judgment of Invalidity Based on Indefiniteness of "Conspicuity" in Claims 1, 3, 7, 11, 12, 18, and Their Asserted Dependent Claims in U.S. Patent No. 5,560,360. Siemens submit as Appendix A, attached hereto, their reply and response to Plaintiffs' purported Genuine Disputes of Material Facts.

Respectfully submitted,

Dated: September 22, 2011

By: /s/ Sean M. McEldowney
Gregg F. LoCascio, P.C. (*pro hac vice*)
gregg.locascio@kirkland.com
Sean M. McEldowney (S.B.N. 248368)
sean.mceldowney@kirkland.com
Christopher R. Nalevanko (*pro hac vice*)
christopher.nalevanko@kirkland.com
Brian N. Gross (*pro hac vice*)
brian.gross@kirkland.com
KIRKLAND & ELLIS LLP
655 15th St. N.W.
Suite 1200
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

Luke L. Dauchot (S.B.N. 229829)
luke.dauchot@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Attorneys for Defendants
SIEMENS MEDICAL SOLUTIONS USA, INC.
and SIEMENS AKTIENGESELLSCHAFT

**Appendix A - Siemens' Reply to Plaintiffs' Purported Statement of Genuine Disputes**

| | Siemens' Uncontroverted Facts | Plaintiffs' Position and Evidence | Siemens' Response |
|---|---|---|---|
| 1. | The "conspicuity" limitation in claims 1-35 was a significant basis for distinguishing the prior art. | NeuroGrafix objects to the language "significant basis" as vague and unclear. It is undisputed, however, that the conspicuity limitation was used as a basis to distinguish prior art. | Plaintiffs' *Markman* Brief: "Claims 1-35 all require processing the output of the MRI machine to provide a conspicuity of the nerve that is at least 1.1 times that of non-neural tissue, and this was a significant basis for distinguishing the prior art." (D.I. 107 at 3.) |
| 2. | The calculation of "conspicuity" proposed by Plaintiffs' involves performing a calculation on a single MR image, not a set of images. | Disputed that this is a material fact. Also, disputed to the extent that the conspicuity calculation may involve a set of images. | Dr. Brant-Zawadzki: "Q. The calculation of conspicuity in the 360 patent involves using a single image, not a set of images; correct? A. Yes. I mean I think the calculation conspicuity in anything involves a single image including in this patent." (Ex. IND1 at 116:20-25, D.I. 136-1 at 33.) |
| 3. | The method of calculating "conspicuity" proposed by Plaintiffs does not take into account noise. | Disputed that this is a material fact. Disputed to the extent that the "fact" implies that the conspicuity calculation is not taught by the '360 patent. It is undisputed the formula for calculating conspicuity in the '360 patent does not expressly require a noise calculation. | Plaintiffs do not dispute that the method for calculating "conspicuity" proposed by Plaintiffs does not expressly require a noise calculation. (Ex. IND1 at 74:12-16, D.I. 136-1 at 23; Ex. IND2 at ¶ 26, D.I. 136-2 at 9-10; Ex. IND3 at ¶ 18, D.I. 136-3 at 7.) |
| 4. | There is no industry | Disputed that this is a material | Dr. Brant-Zawadzki: |

Appendix A - Siemens' Reply to Plaintiffs' Purported Statement of Genuine Disputes

| Siemens' Uncontroverted Facts | Plaintiffs' Position and Evidence | Siemens' Response |
|---|---|---|
| standard, one way of calculating conspicuity. | fact. NeuroGrafix also objects on the basis that this fact is vague and ambiguous. It is, however, undisputed that there is no industry standard for calculating the conspicuity of a structure. | "Q. Dr. Bryan says there's no industry standard for selecting ROIs. You don't dispute that in your report. Do you dispute that as you sit here today? A. Well, there's no industry standard one way of doing it, but most people would do it the way he did it for selecting regions of interest, and that's very similar to the way I would do it and another neuroradiologist or radiologist would do it. So there is a -- even though there isn't an industry standard that says, 'Do it exactly this way,' that's how I interpret the word 'standard' as opposed to 'guideline,' for instance, a lesser prescriptive term. There's no industry standard." (126:17-127:7, D.I. 136-1 at 36-37.) |
| 5. The '360 patent does not prescribe one particular method of selecting a region of interest ("ROI") used for the "conspicuity" calculation in claims 1-35. | Disputed. Ex. 4 at 22:29-35; 27:66-28:7; see also id. at 21:55-57, 30:65-67; Ex. 3 at 75:14-17. | Dr. Brant-Zawadzki: "Q. Do the claims, in your view as one of skill in the art, require you to use any particular ROI or method of selecting an ROI, or is that left to the physician? * * * THE WITNESS: It doesn't -- as I remember the patent, it doesn't specifically say use the oval tool or use the circular tool or use the free |

Siemens' Reply ISO Stmt. of Facts & Response to Plaintiffs' Stmt. of Genuine Disputes

Appendix A - Siemens' Reply to Plaintiffs' Purported Statement of Genuine Disputes

| | Siemens' Uncontroverted Facts | Plaintiffs' Position and Evidence | Siemens' Response |
|---|---|---|---|
| | | | trace tool. So in that sense there's not a specific mention of which tool." (Ex. IND1 at 52:2-13, D.I. 136-1 at 17.)<br><br>Dr. Brant-Zawadzki:<br>"Q. Do the claims, in your view as one of skill in the art, require you to use any particular ROI or method of selecting an ROI, or is that left to the physician?<br>* * *<br>THE WITNESS: It doesn't -- as I remember the patent, it doesn't specifically say use the oval tool or use the circular tool or use the free trace tool. So in that sense there's not a specific mention of which tool." (Ex. IND1 at 53:2-13, D.I. 136-1 at 17.) |
| 6. | The '360 patent does not prescribe how to choose the size of the ROIs to use for the "conspicuity" calculation in claims 1-35. | Disputed. Ex. 4 at 22:29-35; 27:66-28:7; *see also id.* at 21:55-57, 30:65-67; Ex. 3 at 75:14-17. | Dr. Brant-Zawadzki:<br>"Q. With respect to how to select a region of interest in the 360 patent, does the patent describe a particular size of shape region of interest to use?<br>A. No." (Ex. IND1 at 56:19-23, D.I. 136-1 at 20.) |
| 7. | The '360 patent does not | Disputed. Ex. 4 at 22:29-35; 27:66-28:7; *see also id.* at 21:55- | Dr. Brant-Zawadzki: |

**Appendix A - Siemens' Reply to Plaintiffs' Purported Statement of Genuine Disputes**

| | Siemens' Uncontroverted Facts | Plaintiffs' Position and Evidence | Siemens' Response |
|---|---|---|---|
| | prescribe how to choose the shape of the ROI to use for the "conspicuity" calculation in claims 1-35. | 57, 30:65-67; Ex. 3 at 75:14-17. | "Q. With respect to how to select a region of interest in the 360 patent, does the patent describe a particular size of shape region of interest to use?<br><br>A. No." (Ex. IND1 at 56:19-23, D.I. 136-1 at 20.) |
| 8. | The '360 patent does not prescribe one standard way of selecting an ROI to use for the "conspicuity" calculation in claims 1-35. | Disputed. Ex. 4 at 22:29-35; 27:66-28:7; see also id. at 21:55-57, 30:65-67; Ex. 3 at 75:14-17. | Dr. Brant-Zawadzki:<br><br>"Q. And the patent itself says it can be one of a host of different ways of selecting a region of interest; correct?<br><br>A. It gives examples of three, I guess, right there.<br><br>\* \* \*<br><br>Q. Is [sic] doesn't say which of those is the right one to use or which of those to use or which of those to use to determine conspicuity; correct?  It leaves that up to the operator?<br><br>A. Correct.<br><br>Q. And you'd agree with me that different operators could select different methods of selecting the region of interest?<br><br>A. Yes." (Ex. IND1 at 108:18-109:10; D.I. 136-1 at 29-30.) |

Appendix A - Siemens' Reply to Plaintiffs' Purported Statement of Genuine Disputes

| | Siemens' Uncontroverted Facts | Plaintiffs' Position and Evidence | Siemens' Response |
|---|---|---|---|
| 9. | There is no industry | Disputed that this is a material | Dr. Brant-Zawadzki: <br><br> "Q. And the patent doesn't set forth a standard unique to the patent either; correct? <br> A. For selecting -- <br> Q. For selecting an ROI. <br> A. -- ROI? It discusses -- I think we've been through this ground. It discusses several ways of -- possibilities of doing it. <br> Q. But not a standard? <br> A. A standard implies to me one way; right? <br> Q. The way to do it if you want to measure it under the patent. It doesn't give you that, does it? <br> * * * <br> THE WITNESS: Under the patent? I don't know if there's a different connotation to the word standard "in [sic] the legal world under the patent. The patent describes methodologies, with an S. If that means there's not one standard way, then it doesn't." (Ex. IND1 at 127:8-128:3; D.I. 136-1 at 37-38.) <br><br> This fact remains undisputed.  Plaintiffs do not |

Appendix A - Siemens' Reply to Plaintiffs' Purported Statement of Genuine Disputes

| | Siemens' Uncontroverted Facts | Plaintiffs' Position and Evidence | Siemens' Response |
|---|---|---|---|
| | standard one way of selecting an ROI to use for performing measurements on an MR image. | fact. Disputed to the extent that the "fact" implies that the conspicuity calculation is not taught by the '360 patent. NeuroGrafix' [sic] Opposition to Siemens' Motion for Summary Judgment of Indefiniteness of "Conspicuity." | dispute this fact outside of their objection that the fact "implies that the conspicuity calculation is not taught by the '360 patent." |
| 10. | For purposes of calculating the "conspicuity" in claims 1-35 as proposed by Plaintiffs, different operators could choose to use different methods of selecting the ROIs. | Disputed. Ex. 9 at ¶¶ 18-19; Ex. 3 102:1-21. | Dr. Brant-Zawadzki: "Q. And you'd agree with me that different operators could select different methods of selecting the region of interest? A. Yes." (Ex. IND1 at 109:7-10, D.I. 136-1 at 30.) |
| 11. | Manually selecting an ROI is dependent, at least in part, upon the observer's ability to visually distinguish the boundary between two tissues, e.g., the neural tissue and the non-neural tissue. | Disputed. Ex. 9 at ¶¶ 22, 26. | The two paragraphs from Dr. Brant-Zawadzki's Rebuttal Expert Report cited by Plaintiffs do not relate to whether manually selecting an ROI is dependent, at least in part, upon the observer's ability to visually distinguish the boundary between two tissues. (D.I. 144-10 at 10, 11.) |
| 12. | The '360 patent does not expressly disclose how to | Disputed. Ex. 2 at ¶¶ 42-43; Ex. 9 at ¶ 32; Ex. 4 at 27:29-35. | Paragraph 42 of Dr. Brant-Zawadzki's Expert Report cited by Plaintiffs does not discuss the |

Appendix A - Siemens' Reply to Plaintiffs' Purported Statement of Genuine Disputes

| Siemens' Uncontroverted Facts | Plaintiffs' Position and Evidence | Siemens' Response |
|---|---|---|
| select a representative portion of neural or non-neural tissue for purposes of choosing a neural or non-neural ROI. | | disclosures of the '360 patent. (D.I. 144-3 at 14.) Paragraph 43 of that report discusses an example selecting ROIs based on an article not cited or discussed in the '360 patent, and does not reference any specific passage or claim of the '360 patent. (D.I. 14-3 at 14-16.) Paragraph 32 of Dr. Brant-Zawadzki's Rebuttal Expert Report cited by Plaintiffs discusses the ROIs selected in Figures 1-4 of Exhibit C to Dr. Bryan's Opening Expert Report, not the disclosures of the '360 patent. (D.I. 144-10 at 14.). |
| 13. The size, shape, and position of an ROI can change the mean signal intensity measurements resulting from the selected ROI. | Disputed. Ex. 9 at ¶20; Ex. 3 at 49:8-13. | The passage from Dr. Bryan's deposition testimony cited by Plaintiffs relates to hypothetical question, which Dr. Bryan explains would "never happen in a measurement." (D.I. 144-4 at 7.) |
| 14. The method of selecting an ROI has a direct influence on quantitative outcome of the signal intensity measurement for a tissue. | Disputed to the extent this refers to the practical outcome of the signal intensity measurement for a tissue. Ex. 14 at 129:2-131:14. | Dr. Brant-Zawadzki: "Q. Do you agree that the method of ROI definition has a direct influence on quantitative outcome? Is that a true statement or not? \* \* \* |

7

Appendix A - Siemens' Reply to Plaintiffs' Purported Statement of Genuine Disputes

| | Siemens' Uncontroverted Facts | Plaintiffs' Position and Evidence | Siemens' Response |
|---|---|---|---|
| | | | THE WITNESS: In the purest mathematical sense, that's a true statement." (Ex. IND1 at 129:19-130:1, D.I. 136-1 at 39-40.) "Q. You understand that there are various references in the literature where it is discussed specifically that the method of ROI definition has a direct influence on quantitative outcome from MR. Fair? A. Yes. It's an internally consistent statement. ROI implies quantitative." (Ex. IND1 at 165:21-166:2, D.I. 136-1 at 43-44.) |
| 15. | For smaller peripheral nerves, there could be situations where those of skill in the art cannot see the nerve and therefore cannot measure its conspicuity. | Disputed that this is a material fact. Otherwise, undisputed. | Plaintiffs do not dispute this fact. |
| 16. | Plaintiffs contend that the images in Exhibit A to Dr. Filler's Rebuttal Report were made using the method disclosed by the claims of the '360 patent. | Undisputed that the images in Exhibit A to Dr. Filler's Rebuttal Report were made using the method disclosed and claimed by the '360 patent. | Plaintiffs do not dispute this fact. |
| 17. | The neural tissue in Figures | Disputed that this is a material | This fact remains undisputed. Plaintiffs do not |

Appendix A - Siemens' Reply to Plaintiffs' Purported Statement of Genuine Disputes

| | Siemens' Uncontroverted Facts | Plaintiffs' Position and Evidence | Siemens' Response |
|---|---|---|---|
| | 2, 3, and 8 of Exhibit A to Dr. Filler's Rebuttal Report do not have the strongest signal intensities in the image. | fact. Disputed to the extent this "fact" implies that the patent requires the nerve to have the strongest signal intensity in an image. Undisputed that the signal intensity of the neural tissue in Figures 2, 3, and 8 do not have the strongest signal intensity in the image. | dispute that the signal intensity of the neural tissue in Figures 2, 3, and 8 do not have the strongest signal intensity in the image.<br><br>Dr. Brant-Zawadzki:<br>"Q. So if you use a threshold to just take the highest signal intensity, using the image by Dr. Filler [in Figures 2, 3, and 8 of Exhibit A to his Rebuttal Report], you don't see the nerve when you threshold at the top, 10, 30, 40, or even 50 signal intensity; correct?<br>A. Correct." (Ex. IND1 at 214:4-215:16, D.I. 136-1 at 69-70.) |
| 18. | The method Dr. Bryan used to select ROIs in Exhibit C of his Opening Expert Report illustrates exactly the methods Dr. Brant-Zawadzki discussed in his Opening Report. | Disputed. Ex. 9 at ¶¶ 32-33; Ex. 14 at 189:11-191:24. | Dr. Brant-Zawadzki's Rebuttal Expert Report: "the method Dr. Bryan used to select regions of interest in Exhibit C of his expert report illustrates exactly the methods I discussed in my opening report" (D.I. 144-10 at 5); and "... Dr. Bryan ultimately adopts and uses the same method that I describe in my opening report" (D.I. 144-10 at 8). |
| 19. | The mean signal intensity of the non-neural background tissue adjacent to a nerve varies depending | Disputed. Ex. 9 at ¶20; Ex. 3 at 49:8-13. Also, disputed because the signal intensity of the adjacent non-neural tissue will | Paragraph 20 of Dr. Brant-Zawadzki's Rebuttal Expert Report cited by Plaintiffs does not address mean signal intensity variation of non-neural background tissue adjacent to a |

Appendix A - Siemens' Reply to Plaintiffs' Purported Statement of Genuine Disputes

| | Siemens' Uncontroverted Facts | Plaintiffs' Position and Evidence | Siemens' Response |
|---|---|---|---|
| | on the ROI selection. | be consistent if the method taught by the '360 patent is used. | nerve due ROI selection. (D.I. 144-10 at 8-9.) The passage from Dr. Bryan's deposition testimony cited by Plaintiffs relates to hypothetical question, which Dr. Bryan explains would "never happen in a measurement." (D.I. 144-4 at 7.) Facts 16 and 18, *supra*, establish that Dr. Filler used the methods disclosed by the claims of the '360 patent in making Exhibit A to his rebuttal report and Dr. Bryan's ROIs in Exhibit C to his opening report were made with the exact same methods used by Dr. Brant-Zawadzki. |
| 20. | ROIs #1-5 in Figure 7 of Exhibit C to Dr. Bryan's Opening Expert Report identify nerve tissue. | Disputed that this is a material fact. NeuroGrafix also objects to this fact as vague and ambiguous as to "identify." Undisputed that ROIs #1-5 in Figure 7 of Exhibit C to Dr. Bryan's Opening Expert Report purports to identify nerve tissue. | This fact remains undisputed. Plaintiffs do not dispute this fact outside of their objection to the language "identify." |
| 21. | ROIs #1-10 in Figure 8 of Exhibit C to Dr. Bryan's | Disputed that this is a material fact. NeuroGrafix also objects to | This fact remains undisputed. Plaintiffs do not dispute this fact outside of their objection to |

10

Siemens' Reply ISO Stmt. of Facts & Response to Plaintiffs' Stmt. of Genuine Disputes

Appendix A - Siemens' Reply to Plaintiffs' Purported Statement of Genuine Disputes

| | Siemens' Uncontroverted Facts | Plaintiffs' Position and Evidence | Siemens' Response |
|---|---|---|---|
| | Opening Expert Report identify nerve tissue. | this fact as vague and ambiguous as to "identify." Undisputed that ROIs #1-10 in Figure 8 of Exhibit C to Dr. Bryan's Opening Expert Report purports to identify nerve tissue. | the language "identify." |
| 22. | ROIs #1-8 in Figure 9 of Exhibit C to Dr. Bryan's Opening Expert Report identify non-neural tissue. | Disputed that this is a material fact. NeuroGrafix also objects to this fact as vague and ambiguous as to "identify." Undisputed that ROIs #1-8 in Figure 9 of Exhibit C to Dr. Bryan's Opening Expert Report purports to identify nonneural tissue. | This fact remains undisputed. Plaintiffs do not dispute this fact outside of their objection to the language "identify." |
| 23. | ROIs #1-5 in Figure 10 of Exhibit C to Dr. Bryan's Opening Expert Report identify non-neural tissue. | Disputed that this is a material fact. NeuroGrafix also objects to this fact as vague and ambiguous as to "identify." Undisputed that ROIs #1-5 in Figure 10 of Exhibit C to Dr. Bryan's Opening Expert Report purports to identify neural tissue. | This fact remains undisputed. Plaintiffs do not dispute this fact outside of their objection to the language "identify." |
| 24. | In Figure 5 of Exhibit C to Dr. Bryan's Opening Report, ROI #2 is adjacent to ROI #1. | Disputed that ROI #2 is representative of the "any adjacent non-neural tissue" required by claim 18. | Dr. Brant-Zawadzki's Rebuttal Expert Report: "[T]he only conspicuity measurement Dr. Bryan made that is consistent with the adjacent non-neural tissue limitation of claim |

Appendix A - Siemens' Reply to Plaintiffs' Purported Statement of Genuine Disputes

| | Siemens' Uncontroverted Facts | Plaintiffs' Position and Evidence | Siemens' Response |
|---|---|---|---|
| 25. | In Figure 5 of Exhibit C to Dr. Bryan's Opening Report, ROI #2 is placed in tissue that is surrounding ROI #1. | Undisputed | 18 is Figure and ¶ 57." (D.I. 144-10 at 10.) Plaintiffs do not dispute this fact. |
| 26. | In Figure 5 of Exhibit C to Dr. Bryan's Opening Report, ROI #2 identifies non-neural tissue. | Disputed that this is a material fact. NeuroGrafix also objects to this fact as vague and ambiguous as to "identifies." It is undisputed that ROI #2 in Figure 5 of Exhibit C to Dr. Bryan's Opening Expert Report purports to identify nonneural tissue. | This fact remains undisputed. Plaintiffs do not dispute this fact outside of their objection to the language "identify." |
| 27. | In Figure 5 (and accompanying table) of Exhibit A to Dr. Filler's Rebuttal Expert Report, Dr. Filler measured a "conspicuity" of 5.22 of the "plexus" neural tissue as compared to the "lung" non-neural tissue. | Disputed. Dr. Filler did not attempt to do a formal conspicuity analysis on the images as required by the '360 patent. | The fact that Dr. Filler measured a "conspicuity" of 5.22 of the "plexus" neural tissue as compared to the "lung" non-neural tissue, as shown in Figure 5 (and accompanying table) of Exhibit A to Dr. Filler's Rebuttal Expert Report, remains undisputed. (Ex. IND5 at Fig. 5, D.I. 136-5 at 7; Ex. IND1 at 187:5-14, D.I. 136-1 at 58.) |
| 28. | In Figure 6 (and accompanying table) of | Disputed. Dr. Filler did not attempt to do a formal | The fact that Dr. Filler measured a "conspicuity" of 4.56 of the "plexus" neural |

12

Appendix A - Siemens' Reply to Plaintiffs' Purported Statement of Genuine Disputes

| | Siemens' Uncontroverted Facts | Plaintiffs' Position and Evidence | Siemens' Response |
|---|---|---|---|
| | Exhibit A to Dr. Filler's Rebuttal Expert Report, Dr. Filler measured a "conspicuity" of 4.56 of the "plexus" neural tissue as compared to the "lung" non-neural tissue. | Disputed. Dr. Filler did not attempt to do a formal conspicuity analysis on the images as required by the '360 patent. | tissue as compared to the "lung" non-neural tissue, as shown in Figure 6 (and accompanying table) of Exhibit A to Dr. Filler's Rebuttal Expert Report, remains undisputed. (Ex. IND5 at Fig. 6, D.I. 136-5 at 8; Ex. IND1 at 188:5-8, D.I. 136-1 at 59.) |
| 29. | In Figure 7 (and accompanying table) of Exhibit A to Dr. Filler's Rebuttal Expert Report, Dr. Filler measured a "conspicuity" of 3.80 of the "plexus" neural tissue as compared to the "lung" non-neural tissue. | Disputed. Dr. Filler did not attempt to do a formal conspicuity analysis on the images as required by the '360 patent. | The fact that Dr. Filler measured a "conspicuity" of 3.80 of the "plexus" neural tissue as compared to the "lung" non-neural tissue, as shown in Figure 7 (and accompanying table) of Exhibit A to Dr. Filler's Rebuttal Expert Report, remains undisputed. (Ex. IND5 at Fig. 7, D.I. 136-5 at 9; Ex. IND1 at 188:9-13, D.I. 136-1 at 59.) |
| 30. | The images (and accompanying tables) in Figures 5, 6, and 7 of Exhibit A to Dr. Filler's Rebuttal Expert Report were all created using the same underlying DICOM data. | Undisputed | Plaintiffs do not dispute this fact. |
| 31. | The "intensity" limitation | Undisputed | Plaintiffs do not dispute this fact. |

Appendix A - Siemens' Reply to Plaintiffs' Purported Statement of Genuine Disputes

| | Siemens' Uncontroverted Facts | Plaintiffs' Position and Evidence | Siemens' Response |
|---|---|---|---|
| | in claim 19 should be understood the same as the "conspicuity" limitation in the other claims, such that claim 19 effectively requires a "conspicuity of the nerve that is at least 5 times that of the non-neural tissue." | | |
| 32. | The same DICOM data used to generate Figures 5, 6, and 7 of Exhibit A to Dr. Filler's Rebuttal Expert Report may or may not satisfy the claim 19 "intensity" limitation, depending on how an observer selected the regions of interest to use in the conspicuity calculation. | Disputed. Ex. 9 at ¶¶ 20-21. NeuroGrafix also notes that Siemens has failed to cite to any evidence performing the conspicuity calculation taught by the '360 patent. | Dr. Brant-Zawadzki: "Q. The same [DICOM] data [for Exhibit A to Dr. Filler's Rebuttal Expert Report] data, the same scan, depending on how you measured it, would satisfy the [claim] 5 limitation or not satisfy it depending on the selection; true? A. Yes. Q. That's what this shows? A. Yes. It speaks for itself." (Ex. IND1 at 188:21-189:2; D.I. 136-1 at 58-59.) |
| 33. | In Figure 7 of Exhibit C to Dr. Bryan's Opening Report, adjacent to ROI #4 is tissue that is brighter than the tissue in ROI #4. | Disputed. There is no tissue adjacent to ROI #4 that is brighter than the tissue in ROI #4 that has been measured. | Dr. Brant-Zawadzki: "Q. So right next to that oval [in Figure 7 of Dr. Bryan's Exhibit C] is something that you believe may be non-neural tissue that's brighter than the oval; correct? |

**Appendix A - Siemens' Reply to Plaintiffs' Purported Statement of Genuine Disputes**

| Siemens' Uncontroverted Facts | Plaintiffs' Position and Evidence | Siemens' Response |
|---|---|---|
| | | A. It could be some spinal fluid. It could be some non-neural tissue, yes.<br>Q. And that is brighter or higher conspicuity --<br>A. Yes.<br>Q. -- than the nerve next to it?<br>A. It obviously stands out more than what I consider to be the trunk of the nerve. But I wouldn't use that as nerve signal because it might give me too high a signal intensity for the calculation." (Ex. IND1 at 210:5-18, D.I. 136-1 at 65.) |
| 34. In Figure 7 of Exhibit C to Dr. Bryan's Opening Report, ROI #4 identifies nerve tissue. | Disputed that this is a material fact. Undisputed that ROI #4 in Figure 7 purports to identify nerve tissue. | Dr. Brant-Zawadzki:<br>"Q. Let's look at figure 7.<br>A. Okay.<br>Q. Are those nerve ROIs, in your view, consistent with the teachings of the 360 patent?<br>A. The -- it looks like there's some freehand drawing on the left side. The upper ROI is consistent. I would choose the upper one more than the lower one, but they're consistent with it, yes.<br>Q. Okay. And so the two freehand drawings on the left -- |

Appendix A - Siemens' Reply to Plaintiffs' Purported Statement of Genuine Disputes

| Siemens' Uncontroverted Facts | Plaintiffs' Position and Evidence | Siemens' Response |
|---|---|---|
| | | A. Not the two. Just the upper one at most." (Ex. IND1 at 208:14-209:16; D.I. 136-1 at 63-64.) |
| 35. In Figure 7 of Exhibit C to Dr. Bryan's Opening Report, the brighter tissue adjacent to ROI #4 contains some non-neural tissue. | Disputed. There is no tissue adjacent to ROI #4 that is brighter than the tissue in ROI #4 that has been measured. | Dr. Brant-Zawadzki: "Q. So right next to that oval [in Figure 7 of Dr. Bryan's Exhibit C] is something that you believe may be non-neural tissue that's brighter than the oval; correct? A. It could be some spinal fluid. It could be some non-neural tissue, yes. Q. And that is brighter or higher conspicuity -- A. Yes. Q. -- than the nerve next to it? A. It obviously stands out more than what I consider to be the trunk of the nerve. But I wouldn't use that as nerve signal because it might give me too high a signal intensity for the calculation." (Ex. IND1 at 210:5-18, D.I. 136-1 at 65.) |
| 36. For the purposes of the "conspicuity" calculation proposed by Plaintiffs, the non-neural background tissue can be tissue other | Undisputed. Disputed to the extent that the "fact" implies that the conspicuity calculation is not taught by the '360 patent. | This fact remains undisputed. Plaintiffs do not dispute this fact outside of their objection that the fact "implies that the conspicuity calculation is not taught by the '360 patent." |

Appendix A - Siemens' Reply to Plaintiffs' Purported Statement of Genuine Disputes

| | Siemens' Uncontroverted Facts | Plaintiffs' Position and Evidence | Siemens' Response |
|---|---|---|---|
| | than muscle tissue. | | |
| 37. | For the purposes of the "conspicuity" calculation proposed by Plaintiffs, the non-neural background tissue adjacent to a nerve can be tissue other than muscle tissue. | Undisputed. Disputed to the extent that the "fact" implies that the conspicuity calculation is not taught by the '360 patent. | This fact remains undisputed. Plaintiffs do not dispute this fact outside of their objection that the fact "implies that the conspicuity calculation is not taught by the '360 patent." |
| 38. | For the purposes of the "conspicuity" calculation proposed by Plaintiffs, the non-neural background tissue surrounding a nerve can be tissue other than muscle tissue. | Undisputed. Disputed to the extent that the "fact" implies that the conspicuity calculation is not taught by the '360 patent. | This fact remains undisputed. Plaintiffs do not dispute this fact outside of their objection that the fact "implies that the conspicuity calculation is not taught by the '360 patent." |